**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SALLY ROGERS** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1194** |
| | * | |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **RUTH JOHNSON** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1195** |
| | * | |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **JON EVERHART** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1196** |
| | * | |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **VALLIE DEAN** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1197** |
| | * | |
| **BOARD OF EDUCATION OF** | * | |

| | | |
|---|---|---|
| **PRINCE GEORGE'S COUNTY** | * | |
| | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **JOSEPHAT MUA** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1198** |
| | * | |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **SANDRA WILLIAMS** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1231** |
| | * | |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **VENIDA MARSHALL** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1232** |
| | * | |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **LORETTA JARMON** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-1276** |

-3-

|  |  |  |
|---|---|---|
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **NICOLE TURNER** | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: **PJM 11-1278** |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **TRACY ALLISON** | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: **PJM 11-1329** |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| Defendant. | * | |

_____

| | | |
|---|---|---|
| **DARLENE BALL-RICE** | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: **PJM 11-1398** |
| **BOARD OF EDUCATION OF** | * | |
| **PRINCE GEORGE'S COUNTY** | * | |
| Defendant. | * | |

_____

**MEMORANDUM OPINION**

Plaintiffs in these cases are current or former employees of Defendant Board of Education of Prince George's County, Maryland ("the Board"). Plaintiffs have sued the Board alleging discrimination based on violation of various federal statutes, including Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, *et seq*. The Board has filed motions to dismiss, or in the alternative, motions for summary judgment, some of which have been addressed, others of which will be addressed at a later time. The Court's present concern is solely with the claims tied to Title VI. The Board has argued that Plaintiffs' Title VI claims fail as a matter of law. The Court deferred ruling on whether Plaintiffs could pursue their Title VI claims, and requested additional briefing and argument from the parties, which the Court has now considered. For the reasons that follow, the Court **FINDS** that Plaintiffs' are entitled to assert claims pursuant to Title VI and the Board is not entitled to summary judgment at this juncture.

**I.**

The critical issue is whether the Board, in some meaningful measure, receives federal funds for the purpose of providing employment. If so, then Title VI authorizes individual actions for employment-related discrimination. 42 U.S.C. §§ 2000d, -3.

In seeking relief under Title VI, Plaintiffs allege in their Complaints that the United States Department of Education ("DOE") has provided Maryland public schools with more than $1 billion through the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub. L. No. 111-5, 123 Stat. 115, and that Prince George's County Public Schools ("PGCPS") have received such funds "for the express purpose of creating jobs and maintaining existing ones."

The stated "purposes" of ARRA, which Congress passed in early 2009, are:

>     (1) To preserve and create jobs and promote economic recovery.
>     (2) To assist those most impacted by the recession.
>     (3) To provide investments needed to increase economic efficiency by spurring technological advances in science and health.
>     (4) To invest in transportation, environmental protection, and other infrastructure that will provide long-term economic benefits.
>     (5) To stabilize State and local government budgets, in order to minimize and avoid reductions in essential services and counterproductive state and local tax increases.

*Id.* at 116. Congress directed the President and heads of federal departments to expend the funds made available under ARRA "so as to achieve the purposes specified . . . ." *Id.*

ARRA created the State Fiscal Stabilization Fund, administered by the DOE, and directed the Department's Secretary to make grants to each state from the Fund. *Id.* at 279. Over eighty percent of that money was aimed at restoring state support for primary and secondary education. *Id.* at 280. In April 2009, the DOE issued a document entitled "Guidance on the State Fiscal Stabilization Fund Program," which addressed the question, "[w]hat overarching principles guide the distribution and use of all ARRA funds that the Department administers?" The first of four principles outlined was: "Spend funds quickly to save and create jobs." The document went on to state that "[t]he Department is distributing ARRA funds quickly to avert layoffs and create jobs." "States, local educational agencies (LEAs), and IHEs [institutions of higher education] are urged to move rapidly to develop plans for using the funds, consistent with the ARRA's reporting and accountability requirements, and promptly to begin spending funds to help drive the nation's economic recovery." Additionally, the DOE issued a press release in which Secretary Arne Duncan declared that billions of dollars in ARRA funding was available to "lay the foundation for a generation of education reform and help save hundreds of thousands of teaching jobs at risk of state and local budget cuts." Indeed, under the State Fiscal Stabilization Fund, states must submit a report to the Secretary each year that describes "the number of jobs

that the Governor estimates were saved or created with funds the State received under this title." *Id.* at 285.

In August 2010, Congress passed a law creating the Education Jobs Fund. Pub. L. No. 111-226, 124 Stat. 2389. The Education Jobs Fund allocated money to states to be awarded to local educational agencies for the creation and retention of education jobs. *Id.* at 2390. Specifically, federal monies were to be "used only for compensation and benefits and other expenses, such as support services, necessary to retain existing employees, to recall or rehire former employees, and to hire new employees, in order to provide early childhood, elementary, or secondary educational and related services." *Id.*

The Maryland State Board of Education accepts federal funding on behalf of the State. That money is then distributed from the State Treasury to county boards of education, including the Board of Education of Prince George's County. Between the State Fiscal Stabilization Fund and the Education Jobs Fund, Board of Education of Prince George's County received over $100 million from 2009 to 2011.

The Board has filed motions to dismiss, or in the alternative, motions for summary judgment in every one of the captioned cases, arguing that Plaintiffs cannot state valid claims under Title VI. In support of its position, the Board has submitted the affidavit of Matthew Stanski, who has served as Chief Financial Officer for PGCPS since December 2008. One of Stanski's responsibilities is to track funding provided to the school system and expenditure of that money. Stanski avers that "[a]ll federal grants received by the school system are for the primary purpose of increasing student achievement," including ARRA funded grants in 2009. With respect to the Education Jobs Fund, Stanski states that PGCPS were initially awarded $31 million, but the Maryland State Department of Education reduced the one-time grant to $6

million.  The school system used the money to establish "70 new teaching positions" during the 2010-2011 school year.  However, because PGCPS did not receive any additional funding, those 70 positions have been eliminated.

In a spreadsheet attached to his affidavit, Stanski indicates that PGCPS secured State Fiscal Stabilization Fund grants from July 1, 2009 to September 30, 2010 and from July 1, 2010 to September 30, 2011, which he describes as supporting "district-wide utility costs, textbooks, and other LEA instructional materials."  The spreadsheet also shows that PGCPS received Education Jobs Fund money from August 10, 2010 to September 30, 2012.  That assistance, he submits, supported "additional classroom positions in schools and applicable district-wide fringe benefits for school-based instructional personnel."

## II.

### A.

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).  The court, however, need not accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Id*.  There must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint must contain sufficient well-pled facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The factual allegations must "permit the court to infer more than the mere possibility of misconduct." *Iqbal,* 129 S. Ct. at 1950.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**B.**

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court, however, must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Summary judgment is appropriate where a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There must be sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986), and a "mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

**C.**

Section 601 of Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A "program or activity" is defined to include a "local educational agency," which is "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State . . . ." 42 U.S.C. § 2000d-4a(2)(B); 20 U.S.C. § 7801(26)(A). Title VI directs each federal department and agency that extends federal funding to any program or activity to effectuate § 601's prohibition on discrimination. 42 U.S.C. § 2000d-1. The statute, however, limits government enforcement in one important respect. Section 604 states:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d-3. This requirement ensures that Title VI is not transformed into an avenue for pursuing all employment discrimination claims. *See Johnson v. Transp. Agency, Santa Clara Cnty., Cal.*, 480 U.S. 616, 627 n.6 (1987) (noting Congress's concern that the reach of Title VI be kept distinct from Title VII). Rather, there must be a "logical nexus" between the alleged discriminatory practices targeted by agency action and the use of federal funds—i.e., both must relate to employment. *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981).

The case law regarding enforcement of Title VI's provisions is developing. Section 601 "prohibits only intentional discrimination," including retaliation, but does not comprehend

practices that have a disparate discriminatory impact. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Peters v. Jenney*, 327 F.3d 307, 318-19 (4th Cir. 2003). "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Sandoval*, 532 U.S. at 279. Courts have also made clear that the enforcement limitation in § 604 applies to private suits, notwithstanding the language referring to "actions . . . by any department or agency." *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1531 n.8 (10th Cir. 1995) (collecting cases); *Ingram v. Morgan State Univ.*, No. 95-2314, 1996 WL 13861, at *1 (4th Cir. Jan. 16, 1996); *Trageser v. Libbie Rehab. Ctr. Inc.*, 590 F.2d 87, 89 (4th Cir. 1978).

What is somewhat less evident is the extent to which § 604 limits access to the courts in private suits. A minority of cases have characterized this limitation as a "standing" requirement. *See, e.g.*, *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000); *Murphy v. Middletown Enlarged City School Dist.*, 525 F. Supp. 678, 708-09 (E.D.N.Y. 1981). That label, however, may be misleading. Courts tend to analyze standing as an issue of subject-matter jurisdiction.[1] *See, e.g.*, *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003); *Doe v. Sebelius*, 676 F. Supp. 2d 423, 438 (D. Md. 2009); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 102-04 (1998). The Supreme Court has articulated a "bright line" rule to determine whether a "statutory limitation on coverage"—such as that found in § 604—restricts a federal court's jurisdiction: When Congress has not "clearly" stated that "a threshold limitation on a statue's scope" is jurisdictional, "courts should treat the restriction as

---

[1] The "question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

-10-

nonjurisdictional in character."[2] *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006). In the present case, § 604 does not speak in express jurisdictional terms. The statutory language does not clearly restrict a federal court's power to entertain a Title VI action where providing employment was not a primary objective of federal funding received by the defendant. Section 604 refers to authorization of enforcement activity; it never suggests that courts should, *sua sponte*, determine whether the "primary objective" requirement is satisfied for purposes of subject-matter jurisdiction. *Cf. Partington v. American Int'l Specialty Lines Insur. Co.*, 443 F.3d 334, 339 (4th Cir. 2006) (holding that provision of the Securities Act of 1933 requiring plaintiff to show she qualified as a "person purchasing" securities was not jurisdictional because Congress did not clearly characterize it as jurisdictional). Accordingly, the Court finds that § 604 sets forth a nonjurisdictional condition and is not a matter of standing.[3]

Rather than being a standing requirement,[4] the limitation of § 604 is more properly understood as an element of a litigant's cause of action.[5] *See Arbaugh*, 546 U.S. at 516 (holding

---

[2] As the Supreme Court has observed, "'[j]urisdiction'" is "'a word of many, too many, meanings.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (quoting *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 89 (1998)).

[3] This view is reinforced by the fact that the "*absence* of a valid (as opposed to arguable) cause of action does *not* implicate subject-matter jurisdiction . . . ." *Steel Co. v..*, 523 U.S. at 89 (emphases added).

[4] Standing becomes a critical issue when, for example, a litigant is attempting to bring a Title VI claim on behalf of another person or entity. *See, e.g.*, *Mansel v. America's Second Harvest*, No. 6:08-0003-RBH, 2008 WL 4200296, at *4 (D.S.C. Sept. 5, 2008). In this case, Plaintiffs have satisfied the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). They have alleged concrete injuries (various forms of employment discrimination), which, if proven, are arguably traceable to the Board's conduct and are redressable by a court. With respect to prudential limitations, Plaintiffs are asserting their own legal rights and are not raising generalized grievances. Additionally, the interests sought to be protected by Plaintiffs are "arguably" within the zone of interests protected by Title VI, *see Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 492 (1998), which was enacted to prevent the use of federal monies to support discriminatory practices and to provide citizens with effective protection against those practices. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979). As one district court has explained, the "interests arguably to be protected by Title VI . . . are those of persons against whom federally funded programs discriminate." *Bryant v. New Jersey Dep't of Transp.*, 998 F. Supp. 438, 445 (D.N.J. 1998); *see also Maryland State Conf. of NAACP Branches v. Maryland Dep't of State Police*, 72 F. Supp. 2d 560, 567 (D. Md. 1999). Here, Plaintiffs allege in their Complaints that they suffered employment-related discrimination by a local educational agency that received federal financial assistance.

that Title VII's employee-numerosity requirement, 42 U.S.C. § 2000e(b), was an element of a plaintiff's claim for relief and not jurisdictional). The Fourth Circuit treats § 604 in precisely this fashion. *See Venkatraman v. REI Sys, Inc.*, 417 F.3d 418, 420-21 (4th Cir. 2005) (noting that plaintiff failed to allege that "providing employment is a primary objective of the federal aid" defendant received); *Ingram v. Morgan State Univ.*, No. 95-2314, 1996 WL 13861, at *1 (4th Cir. Jan. 16, 1996) (affirming dismissal of Title VI claim where plaintiff-appellant did not allege that defendant received federal financial assistance for the primary purpose of employment or that she was the intended beneficiary of any such assistance); *Trageser v. Libbie Rehab. Ctr. Inc.*, 590 F.2d 87, 89 (4th Cir. 1978) (stating that § 604 curtails private suits under Title VI and requires litigants to show that providing employment is a primary objective of the federal aid defendants receive, or that the employment discrimination complained of necessarily causes discrimination against the primary beneficiaries of the federal aid). District courts in the Fourth Circuit have similarly viewed the "primary objective" requirement as one of the elements of a Title VI claim. In *Allen v. College of William & Mary*, for example, the court dismissed plaintiff's Title VI cause of action for failure to state a claim because she had not sufficiently alleged that a primary objective of the federal funding defendant received was to provide employment, or that the employment discrimination plaintiff allegedly suffered necessarily discriminated against primary beneficiaries of the federal aid. 245 F. Supp. 2d 777, 785 (E.D. Va. 2003); *see also Keeshan v. Eau Claire Coop. Health Ctrs., Inc.*, No. 3:05-3601-MBS, 2007 WL 2903962, at *19-20 (D.S.C. Oct. 2, 2007) (granting summary judgment to defendant where

---

[5] As the Supreme Court noted, "'[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination.'" *Arbaugh*, 546 U.S. at 511 (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[1] (3d ed. 2005)).

plaintiff failed to present sufficient evidence for a reasonable jury to conclude that the primary purpose of the funding defendant received was to provide employment).

Several other courts have also treated § 604 as an element of a Title VI cause of action. In *Reynolds v. School District No. 1, Denver, Colorado*, the Tenth Circuit found that because plaintiff failed to show that the federal funding at issue "was intended primarily to provide employment and not simply to fund various school programs or enrichment activities," she failed to carry "her burden of proving her Title VI claim." 69 F.3d 1523, 1532 (10th Cir. 1995); *see also Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 91-93 (D.D.C. 2010) (dismissing plaintiff's Title VI claim because she never alleged that the primary purpose of the federal funding at issue was to provide employment or that the intended beneficiaries of those funds were employees like her); *Gao v. Hawaii Dep't of the Attorney Gen.*, Cv. No. 09-00478 DAE-BMK, 2010 WL 99355, at *5-6 (D. Haw. Jan. 12, 2010) (granting motion to dismiss where plaintiff failed to claim that his former employer received federal financial assistance the primary objective of which was to provide employment and that the funds went to discriminatory programs or activities); *Johnson v. Comm. College of Allegheny Cnty.*, 566 F. Supp. 2d 405, 457-58 (W.D. Penn. 2008) (granting summary judgment to defendant where plaintiff did not adduce sufficient evidence for a reasonable jury to conclude that the primary purpose of the federal funding defendant received was for employment); *Sims v. United Gov't of Wyandotte Cnty./Kansas City*, 120 F. Supp. 2d 938, 955-56 (D. Kan. 2000) (denying motion to dismiss because plaintiff adequately pled that the federal funding was "provided for the purpose of facilitating employment"). Courts have analyzed § 604 as an element of a plaintiff's cause of action even when describing it as a "threshold" requirement. *See, e.g.*, *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) (finding

that plaintiffs failed to prove "all the elements of their Title VI claim," including the "threshold requirement . . . that the employer be a recipient of federal funds aimed primarily at providing employment").

Treating § 604 as supplying one of several components of a Title VI claim is consistent with how most courts evaluate § 601's basic requirement that the program or activity under which a plaintiff was allegedly subjected to discrimination received federal financial assistance. Federal funding is deemed an element of the cause of action. *See Nat'l Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio, Texas*, 40 F.3d 698, 706 n.9 (5th Cir. 1994); *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001); *Baker v. Bd. of Regents of Kansas*, 991 F.2d 628, 631 (10th Cir. 1993); *Scarlett v. School of Ozarks, Inc.*, 780 F. Supp. 2d 924, 933-34 (W.D. Mo. 2011); *Bishop v. Lewis*, No. WMN-10-3640, 2011 WL 1704755, at *3 (D. Md. May 4, 2011); *White v. Engler*, 188 F. Supp. 2d 730, 745-46 (E.D. Mich. 2001); *D.J. Miller & Assocs., Inc. v. Ohio Dep't of Admin. Servs.*, 115 F. Supp. 2d 872, 878 (S.D. Ohio 2000); *Wren v. Kansas*, 561 F. Supp. 1216, 1221 (D. Kan. 1983). Some courts, as with § 604, describe the federal funding condition as a "threshold" requirement, but nevertheless analyze it as an element a plaintiff must allege to avoid dismissal and then adduce evidence to prove. *See, e.g.*, *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996); *Carmody v. Village of Rockville Ctr.*, 661 F. Supp. 2d 299, 337 (E.D.N.Y. 2009).[6]

---

[6] Courts interpret § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which closely parallels the language of § 601 of Title VI, in a similar way. To state a claim under the Rehabilitation Act, a plaintiff must allege, *inter alia*, exclusion from participation in, denial of benefits of, or discrimination under, any program or activity receiving federal financial assistance. *See, e.g.*, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274-75 (2d Cir. 2009); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 826 (D. Md. 1998); *Armstead v. Becton Dickinson Primary Care Diagnostics, Inc.*, 919 F. Supp. 188, 192 (D. Md. 1996); *but see Doe v. Region 13 Mental*

Having determined that § 604 does not impose a standing requirement, constituting instead an element of a cause of action under Title VI, the Court considers what a plaintiff must show to satisfy this element. Under Fourth Circuit precedent, a plaintiff must show either (1) that a primary objective of the federal funding defendant receives is to provide employment, or (2) that the employment discrimination complained of necessarily causes discrimination against the intended beneficiaries of the federal funding.[7] *See Trageser v. Libbie Rehab. Ctr. Inc.*, 590 F.2d 87, 89 (4th Cir. 1978); *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 785 (E.D. Va. 2003).

Plaintiffs in these cases focus on the first prong to satisfy § 604's requirement, i.e., that a primary objective of the federal funding is to provide employment. The statute is clear that this objective need not be exclusive; providing employment need only be *a* primary goal. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 421 (4th Cir. 2005) (citing *Trageser*, 590 F.2d at 88-89). Nonetheless, courts have strictly interpreted the word "primary." Federal funding aimed at improving education in general, for instance, does not meet the standard. *See, e.g.*, *Johnson v. Comm. College of Allegheny Cnty.*, 566 F. Supp. 2d 405, 457-58 (W.D. Penn. 2008). The fact that federal aid distributed for non-employment purposes might require hiring individuals to carry out those goals is too attenuated as well. Such "'extended logic'" would render § 604's limitation meaningless and vastly expand liability under Title VI.[8] *Middlebrooks v. Godwin*

---

*Health-Mental Retardation Comm.*, 704 F.2d 1402, 1407-08 (5th Cir. 1983) (describing federal funding as a "jurisdictional prerequisite").

[7] To the extent the Board argues that Plaintiffs' claims depend on whether they are "intended beneficiaries" of the federal funding, that argument fails. "[T]here is no requirement that a plaintiff plead that he was an intended beneficiary of the federally-funded program in which defendants are alleged to have participated." *Grimes v. Superior Home Health Care of Middle Tenn., Inc.*, 929 F. Supp. 1088, 1092 (M.D. Tenn. 1996) (citing *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994)).

[8] That the "primary objective" element is not easily established tends to diminish any concern that Title VI will be used to circumvent Title VII and its requirements.

*Corp.*, 722 F. Supp. 2d 82, 93 (D.D.C. 2010) (quoting *Temengil v. Trust Territory of Pacific Islands*, 881 F.2d 647, 653 (9th Cir. 1989)); *see also Keeshan v. Eau Claire Coop. Health Ctrs, Inc.*, No. 3:05-3601-MBS, 2007 WL 2903962, at *20 (D.S.C. Oct. 2, 2007).[9]

Having found that § 604's "primary objective" requirement is a component of Plaintiffs' Title VI claims, it is for a jury, not the Court, to ultimately decide whether each Plaintiff has established this among other elements of their Title VI claims.[10] *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("If satisfaction of an essential element of a claim for relief is at issue, . . . the jury is the proper trier of contested facts." (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150-51 (2000))).

## III.

### A.

The Board argues that Plaintiffs' Title VI claims should be dismissed with prejudice because the primary purpose of the federal funding it receives has been to support educational programs for students, not create or retain jobs. In other words, the Board contends that Plaintiffs have not adequately adduced evidence of the "primary objective" element. 42 U.S.C. § 2000d-3. The Court disagrees.

---

[9] Josephat Mua is the only Plaintiff who invokes the second prong for satisfying § 604, arguing that the employment discrimination he suffered necessarily caused discrimination against students in the public school who were the intended beneficiaries of federal funding aimed at improving student learning and performance. His bald assertion is too implausible to come within the second prong. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). In any event, the Court finds it unnecessary to further analyze the issue because Mua (along with the other Plaintiffs) has stated claims and marshaled sufficient evidence under the first "primary objective" prong to create a genuine dispute of material fact. The Court would note, however, an apparent inconsistency in the Fourth Circuit's definition of the second prong, c*ompare Trageser v. Libbie Rehab. Ctr. Inc.*, 590 F.2d 87, 89 (4th Cir. 1978) (stating that a plaintiff must show that "discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid") *with Ingram v. Morgan State Univer.*, No. 95-2314, 1996 WL 13861, at *1 (4th Cir. Jan. 16, 1996) (stating that a plaintiff must show that "*she* was the intended beneficiary" of federal aid) (emphasis added), and the fact that its foundation has been criticized. *See Carter-Miller v. Washington*, No. C07-1825RAJ, 2008 WL 4542372, at *7-8 (W.D. Wash. Oct. 8, 2008).

[10] Each Plaintiff herein has demanded a jury trial.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint need only contain sufficient well-pled facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs have done just that with respect to the "primary objective" element. Rather than merely rehash the statutory language, each Plaintiff alleges in his or her Complaint that Maryland's public schools have secured more than $1 billion in federal funding and that PGCPS has received this money "for the express purpose of creating jobs and maintaining existing ones." These factual allegations suffice to state a claim that a primary purpose of the federal financial assistance was to provide employment. *Cf. Sims v. Unified Gov't of Wyandotte Cnty./Kansas City*, 120 F. Supp. 2d 938, 956 (D. Kan. 2000) (holding that plaintiff who alleged in her complaint that federal funds "were provided for the purpose of facilitating employment" had "adequately pled facts to support her Title VI claim").

The Complaints also sufficiently allege Title VI's "any program or activity receiving Federal financial assistance" requirement. 42 U.S.C. § 2000d. The Board of Education of Prince George's County is a "public board of education," which qualifies as a "local educational agency," which in turn constitutes a "program or activity" under Title VI. *Id.* § 2000d-4a(2)(B); 20 U.S.C. § 7801(26)(A). In addition, between the State Fiscal Stabilization Fund and the Education Jobs Fund, Plaintiffs assert that the Board of Education of Prince George's County received over $100 million in federal aid from 2009 to 2011.[11]

Whether Plaintiffs have pled sufficient facts to establish any *other* element of their Title VI claims is of course a different question—one the Court does not reach at this juncture. The

---

[11] The fact that the Board received this money as a disbursement from the State of Maryland, rather than directly from the federal government, does not defeat Plaintiffs' Title VI claims. The reach of Title VI does not depend on whether a state receives federal funding and then distributes it to local educational agencies and others, or instead allows the aid to go more directly to the ultimate recipients.

Board remains free to argue that Plaintiffs have otherwise failed to make out prima facie cases of hostile work environment discrimination or retaliation.

**B.**

To the extent the Board contends that summary judgment should be granted in its favor on Plaintiffs' Title VI claims, the Court again disagrees. Plaintiffs have presented sufficient evidence to create a genuine dispute as to whether a primary purpose of the federal funds the Board received was to provide employment. As a result, the Board is not entitled to judgment as a matter of law.

In the first place, the Board concedes that it secured federal financial assistance from the ARRA State Fiscal Stabilization Fund and the Education Jobs Fund, even while it maintains that it "has not received any federal grants where the primary purpose of the funding is to create employment." The Board relies exclusively on the affidavit of PGCPS Chief Financial Officer Matthew Stanski, who avers that the federal monies were distributed for the purpose of improving student achievement, not providing jobs. The State Fiscal Stabilization Fund, Stanski insists, supported "district-wide utility costs, textbooks and other . . . instructional materials." But at the same time, with respect to the Education Jobs Fund, Stanski admits that the Board received $6 million, which was used to hire 70 new teachers during the 2010-2011 school year. In addition, the spreadsheet he prepared states that this assistance supported "additional classroom positions in schools and applicable district-wide fringe benefits for school-based instructional personnel." Stanski attempts to minimize the significance of this funding by pointing out that the Board received far less than the $31 million it was originally slated to secure under the Education Jobs Fund and that the teachers hired with the money were eventually let go due to a lack of additional aid.

Plaintiffs submit that at a minimum there is a genuine dispute as to whether a primary objective of the federal assistance the Board received was to provide employment. They underscore the fact that the State Fiscal Stabilization Fund was created under ARRA, a statute whose first enumerated goal is "[t]o preserve and create jobs and promote economic recovery." The Fund sought to restore states' support for primary and secondary education. In an advisory document, the DOE explained that the first "overarching" principle guiding distribution of ARRA assistance was to "[s]pend funds quickly to save and create jobs." The DOE urged local educational agencies like the Board to "move rapidly to develop plans for using the funds." This money, DOE Secretary Arne Duncan emphasized, was available to "help save hundreds of thousands of teaching jobs at risk of state and local budget cuts." States that accepted State Fiscal Stabilization Fund grants were obliged to submit a report to the Secretary each year outlining "the number of jobs that the Governor estimates were saved or created with funds the State received under this title."

As for the Education Jobs Fund, say Plaintiffs, it does precisely what the title indicates, i.e., allocates money to the State to be awarded to the Board and other local educational agencies for the creation and retention of education jobs. The law that created the Fund makes this purpose even more clear: federal money "may be used only for compensation and benefits and other expenses, such as support services, necessary to retain existing employees, to recall or rehire former employees, and to hire new employees, in order to provide early childhood, elementary, or secondary educational and related services." Pub. L. No. 111-226, 124 Stat. 2389, at 2390.

The Court finds that a reasonable jury could conclude from Plaintiffs' evidence that a primary objective of the federal financial assistance the Board received through the State Fiscal

Stabilization Fund and Education Jobs Fund was to provide employment.[12]  *Cf. Johnson v. Comm. College of Allegheny Cnty.*, 566 F. Supp. 2d 405, 457-59 (W.D. Penn. 2008) (holding that plaintiff did not adduce sufficient evidence for a reasonable jury to conclude that the primary purpose of the Fund for the Improvement of Post Secondary Education grant defendant received was for employment; the record showed that the primary purpose of the federal aid was education).  On this record, a genuine issue for trial exists and the Board is not entitled summary judgment.

**V.**

For the foregoing reasons, the Court **FINDS** that Plaintiffs have adequately stated causes of action under Title VI insofar as the Board may be found to have received federal assistance under the State Fiscal Stabilization Fund and Education Jobs Fund, a primary purpose of which was to fund employment of teachers.  Further, Plaintiffs have adduced evidence of the Board's receipt of funds for the primary purpose of employment sufficient to generate a genuine issue of material fact.  The Board's collective motions to dismiss and motions for summary judgment will be **DENIED** as to Plaintiffs' Title VI claims.

A separate Order will issue.

                                                    /s/
                            **PETER J. MESSITTE**
                    **UNITED STATES DISTRICT JUDGE**

**April 6, 2012**

---

[12]  At oral argument, Plaintiff Mua asserted that the Board received a third source of federal money—the Teacher Incentive Fund—which was aimed primarily at providing employment. Mua bases this argument solely on the spreadsheet PGCPS Chief Financial Officer Matthew Stanski had attached to his affidavit. The spreadsheet indicates that the Board received approximately $10,112,218 in Fund grants from July 1, 2007 through October 1, 2012, and that the purpose of the money was to "[p]ay teachers and supervisors for increased student achievement, professional development, and evaluations." Incentive compensation to teachers, however, does not "provide" employment to them; it merely compensates teachers already employed. As such, this third source of funds in no way supports a cause of action, but since it is cumulative in any case, the Court will simply disregard the argument.